## McLEAN v. DONOGHUE TRANSP. CO.
### No. 3314.

Circuit Court of Appeals, First Circuit.
June 10, 1938.

Ernest L. McLean, of Augusta, Me. (McLean, Fogg & Southard, of Augusta, Me., on the brief), for appellant.

Leon V. Walker, of Portland, Me. (Verrill, Hale, Dana & Walker and Brooks Whitehouse, all of Portland, Me., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an action of tort brought by the executor of the estate of Dr. Lathbury to recover damages to property and for conscious suffering of his intestate, arising out of a collision between the doctor's automobile and a truck of the defendant. The declaration contained three counts. The first one was waived. In the first of the remaining counts it was alleged that on the 8th day of December, 1936, the doctor, with his wife, was driving his automobile easterly through Freeport on the highway known as Route 1, and was in the exercise of due care and caution; that the defendant was then and there operating on the highway a Ford truck and trailer and was proceeding through Freeport in a westerly direction; that the defendant was operating its truck at an excessive and unlawful rate of speed and on its wrong side of the road, and without due care and consideration of the doctor then and there lawfully on said highway; that, because of said negligence and operation of its truck, it ran into the automobile wrecking the same and injuring the doctor. In the second or remaining count it was alleged that on the 8th day of December, 1936, in Freeport, the doctor was operating an automobile on the highway known as Route No. 1, at a point on the highway just westerly of where it passed over the tracks of the Maine Central Railroad by virtue of an overpass; that the doctor was proceeding in an easterly direction towards Brunswick; that the defendant was operating a Ford truck and trailer proceeding in a westerly direction toward Portland; that it was the duty of the defendant to use reasonable care and caution in the management and operation of its truck so as not to unduly expose other travelers then and there on the highway to undue danger and peril; that the defendant wholly in disregard of said duty and notwithstanding that just prior to the collision it noted that the doctor was momentarily confused, instead of using due care and caution and instead of decreasing its speed and keeping to its right side of the highway, increased the speed of its truck and turned to its left, to the doctor's side of the highway and, because of its negligence, the truck ran into the doctor's automobile and wrecked it, etc.

The defendant pleaded the general issue and, in a brief statement, set up (1) that the doctor's injuries were due solely to his own negligence, and (2) that he was guilty of contributory negligence. The jury returned a verdict for the defendant, upon which judgment was entered, and this appeal was taken.

The doctor's car was a Nash coupé and the defendant's truck was a ten wheel Ford V-8, commonly known as a Ford tractor-trailer. It consisted of a tractor having two wheels in front and four in the rear (dual), on which was mounted the engine and the driver's cab. The rear end of the tractor supported the front end of the trailer. The trailer had four wheels (dual) supporting its rear. The tractor and trailer were slightly longer than two ordinary cars.

The collision occurred December 8, 1936, between 5:30 and 5:45. It was dark and the headlights of both cars were on. The doctor was driving easterly towards Freeport Village on Highway No. 1. The truck was being driven westerly from Freeport Village. Highway No. 1, as it existed at the time of the accident, crossed the Maine Central Railroad by an overpass. From the overpass westerly this portion of Highway No. 1, 32 feet wide and covered with a surface of black tar, continued in a straight line to its intersection with Highway No. 1 as originally constructed, and likewise for a considerable distance

beyond the point of intersection. As originally constructed Highway No. 1 was a 2-slab concrete road, 20 feet wide, and as the road going easterly approached its intersection with the 32-foot black surfaced road, it swung to the left in a gradual turn and continued on across the railroad tracks at grade and thence to Freeport Village. Where the new and old portions of the road met the black surface did not extend into and across the light colored concrete of the old road, but abutted it on the southerly side, the black surface narrowing until it came to a vanishing point where the southerly line of the new road merged with the southerly line of the old one. The portion of the concrete road bearing northerly and crossing the railroad tracks at grade had not been discontinued at the time of the accident and still remained in use.

As one driving easterly came to the point where the southerly line became black he was confronted with the light colored concrete slabs of the old road continuing to the left around the curve and with the black road extending straight up the grade to the overpass. At the time of the accident the new black road had been opened to traffic only a short time and the doctor had used the new road but once and that on the day of the accident when he passed over it in the opposite direction on his way to Portland.

The cars collided on the new road practically opposite what is referred to as the "scarred post" situated on the southerly side of the new road. This post is 232 feet easterly from the point where the center lines of the old and new roads merge. Measuring westerly along the new road it is 60 feet opposite the scarred post to the point where the central line of the new road touches the southerly edge of the old concrete road; and from the scarred post it is about 144 feet easterly to a point opposite the westerly end of a white fence along the northerly side of the new road. The combined width of the two roads opposite the scarred post is 52 feet.

There were only two witnesses who saw or knew anything about the occurrences leading up to the collision—North, the driver of defendant's truck, and Mayo who was riding with him. Both were called by the defendant. They testified that both before and at the time of the collision the truck was not going over 35 miles an hour. When the truck was about at the westerly end of the fence on the northerly side of the new road (144 feet easterly from the scarred post), they first noticed the doctor's automobile or its lights in the locality where the extreme westerly end of the black surface began (some 232 feet westerly from the scarred post) and about where there is a catch basin. They estimated its speed at about 40 or 50 miles an hour. At that point they noticed some wobbling of the doctor's car as if the driver was uncertain which road to take, but saw it turn to the left far enough to about straddle the middle line of the concrete road. The truck was then on its extreme right side of the center line of the new road, but, when North saw the doctor turn his automobile to its left he turned the truck slightly to his left to avoid going into the course of the doctor's car. The automobile then swerved towards the truck from the old concrete road to the new tar road and the collision occurred. When the automobile swerved to its right towards the truck, North applied the brakes of the truck and endeavored to swing it to the right, but the left front side of the automobile, coming across at an angle of some 45 degrees, struck the front of the tractor at the left of the center of the radiator and swung the tractor to its left on the pivot connecting it with the trailer, so that the left front wheel of the tractor came to rest about 4 feet to the left of the middle line of the new road. The impact stopped the truck. The force of the blow bent the left part of the frame of the tractor to the left at an angle of about 45 degrees. When the truck came to rest no part of the trailer was on its left side of the middle line of the highway. The cars would have safely passed each other in the direction they were going up to the time the doctor made the final swerve from the concrete road into the new one.

After the collision the right rear wheel of the automobile was up against the scarred post, the front end pointing diagonally into the road. The trailer part of the truck was on its right of the center line, with the tractor part turned sharply to the left, its front wheels being three or four feet over that line. There was under the trailer and leading up to the left rear wheel of the tractor a tire mark some four or five feet long caused by the application of the brakes on the tractor. This mark was on the right side of the center line of the highway when going westerly. There were no marks on the road indicating that the automobile had been pushed sideways. These

facts as to the location of the trailer, the tractor, the tire marks on the road, and the position of the doctor's car after the accident had occurred were also testified to by a witness who was a deputy sheriff and Chief of Police in Freeport and who arrived at the scene of the accident about ten minutes after it occurred. A car going westerly, in order to get by the trailer after it had stopped, would have to go to the right onto the northerly shoulder of the new road.

North did not have a legal driver's license at the time. A witness called by the plaintiff, who was driving an automobile a short distance behind the truck, testified that he was traveling at the rate of about 40 or 45 miles an hour and that he did not seem to gain on the truck; that he would say the truck was probably proceeding at about the same speed he was. The doctor's wife, who was with him in the automobile, testified that at the time of the accident the doctor was driving at 40 miles an hour and was on the right hand side of the road, but other than this she apparently knew nothing about how the accident happened.

The court charged the jury at length and with great care. Plaintiff's counsel evidently regarded the charge as stating the law governing the case so well that he took no exceptions to it. The only exceptions taken, here assigned as error, were to the denial of five requests for rulings which the court declined to give, except so far as they were covered by the charge.

■ We think that on the evidence submitted the District Court would have been warranted in directing a verdict for the defendant; that reasonable men could draw no other conclusion from it than that the doctor's conduct, if not the sole cause of the accident, was a contributory one, and in either case the verdict should be for the defendant. Under these circumstances the question whether the plaintiff's requests were or were not proper is of no consequence. The failure to give any of them was harmless. Section 391, Title 28, U.S.C., 28 U.S.C.A. § 391, provides:

"On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

Here no substantial rights of the plaintiff were affected.

■■ But without regard to this, we think that the first request was properly denied. The plaintiff had the burden not only of showing that the defendant was negligent but that its negligence was the cause of the accident. This request placed the burden upon the defendant of showing that its negligence was not the cause of the accident— a reversal of the correct rule.

■ The second request was given in substance. The jury was instructed that the failure of the driver of the defendant's truck to have a chauffeur's license, while evidence of negligence, was not conclusive and it was for the jury to say on all the evidence whether the defendant was negligent.

The court further instructed the jury:

"Did the defendant act [negligently] as the plaintiff says he did and, if so, was what he did the cause of the accident? Now that is important. Both are necessary to show in order for the plaintiff to recover, because a man may do a negligent and careless thing, or a thing prohibited by the statutes of the State on the highway, but if it didn't cause the accident and wasn't the occasion of the trouble there is no liability. The plaintiff must show both the negligence and that the negligence was the cause of the accident."

The third request for instructions was given in substance. The court charged the jury:

"Both parties are, however, presumed to be in the exercise of proper care and caution unless the contrary is shown.... And here the burden of proof is on the plaintiff, in the first place, to show negligence right straight through—to show negligence on the part of the defendant. Later on, if the defendant alleges, as he does here, that there was negligence on the part of the plaintiff, the burden is on him to show that fact."

■ The fourth request is without basis in fact. If, on the evidence, an emergency was shown to exist it was not created in whole or in part by the negligence of the truck driver, but rather by the action of the doctor when he swerved from the cement road into the course of the truck. If the requested instruction had been given, its tendency would have been to confuse and mislead the jury.

The fifth request was likewise without applicability to the facts. The evidence failed to show that there was a time after the doctor was in danger that the defendant's truck driver, by the exercise of reasonable care, could have avoided the accident.

The judgment of the District Court is affirmed, with costs to the appellee.